# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JESSICA ABEYTA, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> STONECREST MEDICAL CENTER ) <br> *et al.*, ) <br> ) <br>     Defendants. ) | No. 3:18-cv-0386 <br> Judge Aleta A. Trauger |

## MEMORANDUM

Plaintiff Jessica Abeyta has filed a Complaint (Doc. No. 1) asserting claims under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182(a), Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, and state tort law. Because the plaintiff proceeds *in forma pauperis*, the Complaint is before the court for an initial review pursuant to 28 U.S.C. § 1915(e)(2).

## I.  Standard of Review

By law, the court must conduct an initial review of any civil complaint filed *in forma pauperis*. 28 U.S.C. § 1915(e)(2). Upon conducting this review, the court must dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. *Id.* The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under [that statute] because the relevant statutory

language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

Thus, in reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). The court must then consider whether those factual allegations, accepted as true, "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). The court "need not accept as true legal conclusions or unwarranted factual inferences." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

A "*pro se* complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Even under this lenient standard, *pro se* plaintiffs must meet basic pleading requirements. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004).

## II.     Factual Allegations and Procedural Background

The plaintiff names as defendants Stonecrest Medical Center (the "hospital"), Harold Andrew Sloas III, M.D., Bonnie Bingham, RN, Melissa Tremblay, RN, and "Security guard of unknown name." (Doc. No. 1, at 1.)

In support of her claims under the ADA, Section 504, and state tort law, the plaintiff alleges that she voluntarily went to the hospital's Emergency Department for treatment of

shortness of breath, chest pain, and dizziness on April 20, 2017. She claims that, instead of receiving treatment for these symptoms, she was "involuntarily detained, stripped, denied her medication, and forcibly drugged." (*Id.*) More specifically, the plaintiff alleges that, when she arrived at the hospital, carrying "4 totes of information and medical supplies" (*id.* at 4), the medical practitioners with whom she met ignored her records, did not listen to her complaints, and immediately assumed that she was suffering from some type of psychiatric disorder rather than a physical disorder, despite records in her possession documenting her medical conditions. She was forcibly taken to a small room where she was denied the ability to access help, given medications that exacerbated her heart condition, denied prescribed medications and oxygen, forcibly stripped of all her clothing, and generally deprived of her right to direct her own care. She was "repeatedly drugged and threatened about the length of her stay" (*id.* at 6), but she was not provided adequate food or bedding and was not allowed to communicate with anyone. She states that "[s]he was not ever given the opportunity as according to Title III of disability act and section 504 of rehabilitation act to ask calmly, yet with nervousness about being drugged[,] towards what kind of plan of action was to take place." (*Id.*) The plaintiff specifically denies that she posed a threat of harm to herself or others. (*Id.* at 12.) She does not indicate for how long she was detained at the hospital against her will.

In further support of her claim that the defendant "failed to provide reasonable accommodations" in violation of Title III of the ADA, the plaintiff states that the hospital discriminated against her on the basis of a disability by "failing to grant her a reasonable accommodation of waiving its requirement of removal of all clothing, despite Plaintiff's willingness to communicate and share about the nature of why [she] and [her] Care helper decided to arrive at the Hospital." (*Id.* at 9.) She claims she was placed in fear of her life by

being forcibly made to remove her clothing, without any determination of clinical necessity or a provision for reconsideration.

She claims that the hospital's practice of injecting her with medications without a determination of clinical necessity, by a medical practitioner who was not fully apprised of her diagnoses and health status, "without provision for reconsideration, <u>reasonable accommodation or waiver</u>, constitutes a method of administration that has the effect of discriminating on the basis of disability" in violation of the ADA. (*Id.* at 10.) She asserts that the hospital's rejection of her request for rest and to sleep in a secluded room without being drugged constituted the denial of a reasonable accommodation in violation of the ADA and Section 504. And she maintains that the hospital's primary physician "refused to consider the known dangers" of the drugs she was administered, in light of her medical condition, which also constituted the denial of "reasonable accommodations to consider the risks." (*Id.*)

She alleges that she remains in fear and suffers emotional distress as a result of the possibility that the hospital will continue to violate her rights "when she must follow orders to return to an emergency." (*Id.* at 10.)

The plaintiff asserts that regulations applicable to hospitals under Section 504 prohibit affording qualified handicapped persons "less effective or unequal services than those received by others." (*Id.* at 11 (citing 45 C.F.R. § 84.4(b)(1)).) "By adopting a policy and practice requiring mandatory disrobing, including the removal of clothing and medications by force, of any individual in the psychiatric emergency room, without an individualized assessment of clinical necessity and with no provision for reasonable accommodations or modifications," the hospital provides less effective treatment services, in violation of Section 504. (*Id.*) In addition, the hospital's failure to allow her to call other persons with actual knowledge of her medical

conditions and "known disabilities" constituted the provision of less effective services in violation of Section 504. (*Id.*)

The plaintiff asserts that these actions and others also give rise to state law claims for medical battery, intentional or reckless infliction of emotional distress, negligence *per se*, invasion of privacy, and false imprisonment.

She states that she will suffer irreparable harm if the court does not assume jurisdiction over this matter and enter a declaratory judgment finding that the hospital's actions violate the ADA, Section 504, and state law insofar as the actions constitute discrimination against persons with heart arrhythmia conditions, ischemia conditions, and post-traumatic stress disorder disabilities. Among other things, she demands that the court issue an injunction requiring the hospital to (1) treat the plaintiff the same "whether she seeks medical or emotional care" (*id.* at 18); (2) provide reasonable accommodations of the plaintiff's medical conditions by performing an individualized assessment of her disability as proven by valid documents, her designated agent for healthcare decisions, or other persons with knowledge of her health condition; (3) provide her access to oxygen and better care; and (4) that, "before any snap judgment of need for commitment," the hospital be required to allow her to "reach out to an objective Mental health worker or mobile crisis" and ascertain her actual medical and mental status "before invasions of her right to protect her health and her mental facilities" (*id.* at 19). She appears to seek damages arising from her RA and tort claims and a jury to try those claims for which she is entitled to a jury, as well as attorney's fees and costs.

She asserts that the court has jurisdiction over the federal claims asserted in this action under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

**III.     Discussion**

    **A.     ADA Claim**

Title III of the ADA states: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Title III authorizes only injunctive relief, not monetary damages, to successful plaintiffs. "[T]he enforcement statute [for Title III] is 42 U.S.C. § 12188, which incorporates the remedies of 42 U.S.C. § 2000a-3(a), and that section does not include money damages." *Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286, 293 (6th Cir. 1999). The plaintiff here specifically seeks only injunctive and declaratory relief under the ADA.

Generally, "[a] person alleging discrimination under Title III must show (1) that she is disabled within the meaning of the ADA, (2) that the defendant is a private entity that owns, leases, or operates a place of public accommodation, (3) that the defendant took adverse action against the plaintiff that was based upon the plaintiff's disability, and (4) that the defendant failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the public accommodation." *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir. 1999); *see also Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 542–43 (W.D. Pa. 2013) ("To state a claim under Title III of the ADA, a plaintiff must show (1) discrimination on the basis of a disability; (2) in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation; (3) by the public accommodation's owner, lessor or operator." (internal quotation marks and citation omitted).

Regarding the threshold question of whether she was disabled, the plaintiff does not expressly identify the basis for her disability except in the "Prayer for Relief" section of her Complaint, when she asserts that the hospital violates the ADA and Section 504 of the RA by "discriminat[ing] against persons with heart Arrhythmia conditions, ischemia condition[1] and PTSD disabilities." (Doc. No. 1, at 18.) The plaintiff also alleges elsewhere in the Complaint that she suffers from tachycardia and various "diagnosed heart conditions." (*See, e.g.*, Doc. No. 1, at 6.) She does not actually allege that she suffers from any psychiatric problems (other than PTSD), but the allegations in the Complaint suggest that she was, at the very least, regarded by the hospital staff has suffering from a mental impairment. The court accepts for purposes of the initial review that the plaintiff is "disabled" as that term is defined by the ADA. *See* 42 U.S.C. § 12102(1) (defining "disability" to include "being regarded as having" a "physical or mental impairment that substantially limits one or more major activities").

For purposes of the second element, the term "public accommodation" is defined to include hospitals. 42 U.S.C. § 12181(7)(F). The defendant hospital may be held liable under the ADA, but the individual defendants cannot. If the plaintiff intended to assert ADA claims against the individual defendants, such claims are subject to dismissal.

Regarding discrimination and a failure to accommodate, which she conflates, the plaintiff alleges that (1) she was forced to undress in front of a male attendant without regard to whether such disrobing was medically necessary; (2) she was forcibly medicated without a determination of clinical necessity; (3) she was denied the ability to rest and to sleep in a secluded room without being drugged; and (4) the hospital's primary physician "refused to consider the known

---

[1] "Ischemia" refers to a deficient supply of blood to a body part due to an obstruction of the inflow of arterial blood. *See* https://www.merriam-webster.com/dictionary/ischemia.

dangers" of the drugs she was administered, in light of her medical condition. (Doc. No. 1, at 10.) These allegations suggest that the defendant effectively disregarded the plaintiff's medical conditions and treated her as if she were suffering solely from a mental impairment.

The court liberally construes the Complaint as alleging that the plaintiff was "regarded as" disabled by the hospital on the basis of a mental impairment and, further, that she was discriminated against on the basis of that perceived disability when the hospital staff refused to perform an adequate medical assessment and failed to attend to her medical needs. Instead, the hospital staff presumed that she needed mental health care only. As a result, the plaintiff was "thrown" into a room without a thorough medical evaluation, given inappropriate medications that were dangerous for a person with her medical conditions, and deprived for some period of time of adequate food and bedding, necessary medications, and contact with persons outside the hospital. Based on these allegations, the court finds that the plaintiff has alleged facts that, if true, indicate that her rights under Title III of the ADA may have been violated.

But recovery under Title III of the ADA requires more than a showing of a past violation. Because Title III only permits recovery of prospective injunctive relief, the plaintiff must establish that she remains under the threat of future injury and thus has standing to seek such relief. *See Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 580 (6th Cir. 2014) ("[W]e agree with those circuits that have considered the issue and concluded that a plaintiff demonstrates the requisite threat of future injury [for purposes of a claim under Title III of the ADA] where he establishes . . . a plausible intent to return to the noncompliant accommodation . . . ."). Although the allegations pertaining to future injury are somewhat vague, the plaintiff suggests that, in light of her medical condition, it is likely that she will need to seek emergency treatment at the defendant hospital repeatedly in the future. (*See* Doc. No. 1, at 10

("Further, as a direct and proximate cause of the defendants' conduct, the plaintiff is at further risk of her heart condition to be negated and [undermined] . . . when she must follow orders to return to an emergency.").) The court finds, for purposes of the initial review at least, that the plaintiff has standing to seek relief for violations of Title III of the ADA. This claim, as asserted against the hospital, will not be dismissed on initial review.

### B. Section 504

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. The Rehabilitation Act has frequently been applied to facilities providing medical treatment. *See, e.g.*, *Davis v. Flexman*, 109 F. Supp. 2d 776, 785 (S.D. Ohio 1999) (collecting cases).

To establish a claim under this provision, a plaintiff must show that: (1) she is an individual with a disability; (2) she is otherwise qualified for participation in the program or activity, or for the position sought; (3) she was excluded from the position sought, denied the benefits of, or subject to discrimination under the program or activity "solely by reason of [her] handicap"; and (4) the relevant program or activity receives federal financial assistance. *Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 573 (6th Cir. 1988) (quoted in *Mitchell through Mitchell v. Cmty. Mental Health of Cent. Mich.*, 243 F. Supp. 3d 822, 842 (E.D. Mich. 2017)). Other than Section 504's "limitation to denials of benefits 'solely' by reasons of disability and its reach of only federal funded entities, the reach and requirements of [the ADA and Section 504] are precisely the same." *S.S. v. E. Kentucky*, 532 F.3d 445, 452–53 (6th Cir. 2008).

Although the Complaint contains no allegations regarding whether the hospital receives

federal funding, the court nonetheless finds it appropriate at this juncture to permit the Section 504 claim to proceed against the hospital, for the same reasons pertaining to the ADA claims.

C.  **State Law Claims**

Although the plaintiff's allegations in support of the state law claims are somewhat vague with regard to which individual defendant took which action, the court will nonetheless allow the plaintiff's state law claims for negligence, false imprisonment, medical battery, and intentional or reckless infliction of emotional distress to proceed, for now.

D.  **Statute of Limitations**

Finally, the plaintiff is forewarned that both her federal claims and her state law claims may be barred by Tennessee's one-year statute of limitations that applies to personal injury actions, Tenn. Code Ann. § 28-3-104(a)(1)(A). *See McCormick v. Miami Univ.*, 693 F.3d 654, 663 (6th Cir. 2012) (applying the state's statute of limitations for personal injury actions to an ADA claim); *I.L. through Taylor v. Knox Cty. Bd. of Educ.*, 257 F. Supp. 3d 946, 964 (E.D. Tenn. 2017) (applying one-year statute of limitations in Tenn. Code Ann. § 28-3-104(a)(1)(A) to ADA and RA claims), *aff'd on other grounds sub nom. I.L. by & through Taylor v. Tenn. Dep't of Educ.*, No. 17-6002, 2018 WL 3098944 (6th Cir. June 25, 2018).

The plaintiff alleges that most or all of the events giving rise to her claims took place on April 20, 2017, but she did not file the present law suit until April 23, 2018, more than one year later. Because the statute of limitations is a waivable affirmative defense that may be subject to tolling, and the plaintiff does not actually indicate how long she was hospitalized, the court will not dismiss the claims on initial review.

## IV. Conclusion

For the reasons set forth herein, the court will direct that the Complaint be served on the defendants. An appropriate order is filed herewith.

ENTER this 18th day of July 2018.

_____
ALETA A. TRAUGER
United States District Judge